IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ANNE ECHOLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 3:19-cv-836-SMD |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

Anne Echols ("Plaintiff") filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income in May 2017 alleging disability beginning in February 2017. R. 15, 155–65. The application was denied at the initial administrative level, and Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ") on November 15, 2018. R. 15, 101–45. Following the hearing, the ALJ issued an unfavorable decision, and the Appeals Council denied Plaintiff's request for review on October 17, 2019. R. 1–3. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

The case is now before the Court for review under 42 U.S.C. § 405(g).  Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 10); Gov't's Consent to Jurisdiction (Doc. 9).  After careful scrutiny of the record and the parties' briefs, and for the reasons herein explained, the Court AFFIRMS the Commissioner's decision.

## II.    STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one.  The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater,* 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)).  Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel,* 129 F.3d 1420, 1422 (11th Cir. 1997).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales,* 402 U.S. 389 (1971)); *Foote,* 67 F.3d at 1560 (citing *Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart,* 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan,* 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560 (citing *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence*." Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth,* 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan,* 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan,* 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor,* 786 F.2d at 1053).

## III.  STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. §

423(a).  The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program.   SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.   Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)–(C).   However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen,* 799 F.2d 1455, 1456 n.1 (11th Cir. 1986).

Applicants under DIB and SSI must prove "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs.   *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).   A person is entitled to disability benefits when the person is unable to

> [e]ngage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

> (1)     Is the person presently unemployed?
>
> (2)     Is the person's impairment(s) severe?
>
> (3)     Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
>
> (4)     Is the person unable to perform his or her former occupation?
>
> (5)     Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart,* 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying for disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238–39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id.* It also can contain both exertional and nonexertional limitations. *Id.* at 1242–43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience

to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines ("grids") or hear testimony from a vocational expert ("VE"). *Id.* at 1239–40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

## IV.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was 43-years-old at the time of the ALJ's decision. R. 23. She lives in Opelika, Alabama, with her long-term boyfriend. R. 18, 46. She has obtained an associate's degree. R. 38. Plaintiff's primary complaints are osteoarthritis and spinal stenosis. R. 18–20. In the past, Plaintiff worked as a caterer/helper, data entry clerk, and telephone operator. R. 22.

Following an administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "has not engaged in substantial gainful activity since February 28, 2017, the alleged onset date[.]" R. 17. At Step Two, the ALJ found that Plaintiff suffers from the following severe impairments under 20 C.F.R. § 416.920(c): spine disorder, post decompressive laminectomy and foraminotomy, hernia with history of hernia repair, and obesity. R. 17. But the ALJ concluded at Step Three of the analysis that none of Plaintiff's impairments, nor a combination of her impairments, met or medically

6

equaled the severity of one of those listed in the applicable regulations. R. 20.  Next, the

ALJ articulated Plaintiff's RFC as follows:

> the claimant has the residual functional capacity to perform sedentary work
> as defined in 20 CFR 404.1567(a) and 416.967(a) except that she can climb
> ramps and stairs, but never climb ladders, ropes, or scaffolds; balance
> frequently; sto[o]p occasionally; kneel occasionally; crouch occasionally;
> crawl occasionally; she can never work around unprotected heights; she can
> occasionally work around hazardous moving mechanical parts; and she can
> occasionally operate a motor vehicle.

R. 20.  At Step Four, having consulted with a VE, the ALJ concluded that Plaintiff has past

work as a caterer/helper, data entry clerk, and telephone operator, and that she "is capable

of performing past relevant work." R. 22.  The ALJ next concluded, at Step Five, that

"[a]lthough the claimant is capable of performing past relevant work, there are other jobs

existing in the national economy that she is also able to perform." R. 23.  Based upon the

testimony of the VE, the ALJ identified the following as representative occupations:  a

"small parts assembler," a "Electronics worker," and a "Laundry folder." R. 23.

Accordingly, the ALJ concluded that Plaintiff "has not been under a disability [. . .] from

February 28, 2017, through the date of this decision." R. 24.  Based on these findings, the

ALJ denied Plaintiff's claim. R. 12.

## V.    PLAINTIFF'S CLAIMS

Plaintiff presents two issues for the Court to consider in its review of the

Commissioner's decision: (1) Whether the "ALJ failed to properly evaluate Plaintiff's

subjective statements;" and (2) whether the "ALJ erred by failing to request a psychological

examination and by failing to evaluate the severity of [Plaintiff's] mental impairments."

(Doc. 12) at 2.

## VI.   DISCUSSION

### A.   Rejection of Pain Testimony

Plaintiff claims the ALJ failed to "properly evaluate [her] subjective statements" regarding her pain and her limited daily activities as a result of her pain.  "In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (b) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Wilson*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).  If a plaintiff establishes evidence of an underlying medical condition and either part two or three of the test, the ALJ must then make a credibility determination about the plaintiff's descriptions of her pain.  "If the ALJ decides not to credit a claimant's testimony as to her pain, [s]he must articulate explicit and adequate reasons for doing so. [. . .] A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1561–62 (citing *MacGregor*, 786 F.2d at 1054).

Plaintiff avers that the ALJ simply used boilerplate language to dismiss her subjective testimony of pain and that the ALJ's "conclusory finding [. . .] did not provide 'explicit and adequate reasons' for finding [Plaintiff's] statements not supported, as is required in the Eleventh Circuit."  (Doc. 12) at 4–5.  Plaintiff testified that she became disabled on February 28, 2017, when she felt pain shooting down her legs after she was

standing for a long period of time at work. R. 40.  She stated that she has lower back pain between the center of her back and the upper part of her tail bone that radiates up her back and shoots down her left leg and, at times, her right leg. R. 40–41.  Plaintiff testified that it is excruciating and chronic pain that lasts all day and is not relieved by using ice, heat, stretching, or alternating positions. R. 41.  Plaintiff received lumbar facet blocks in 2017 that began to give her relief but was unable to continue those treatments after she lost her insurance. R. 42.  However, she was able to receive epidural injections from East Alabama Medical Center Pain Clinic because they did not charge the costs up front. R. 42–43. Plaintiff stated that she is unable to get prescription strength pain medication from the pain clinic, so in addition to the epidurals she takes over-the-counter ibuprofen and BC Powder. R. 44.  Plaintiff testified that after taking her over-the-counter pain medication, her pain level is at an eight on a ten-point scale. R. 44.

Plaintiff argues that the ALJ failed to provide any reasoning as to why she discredited Plaintiff's testimony beyond the boilerplate language that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Doc. 12) at 4; R. 21. However, the undersigned has reviewed the ALJ's opinion, along with the entire record in this case, and finds that the ALJ properly articulated his reasons for discrediting Plaintiff's complaints as to the severity of her pain.

At Step Two of the five-step process, the ALJ reviewed and discussed Plaintiff's records, stating that with regards to her "musculoskeletal and neurological issues of the spine disorder, postcompressive laminectomy and foraminotomy, hernia with history of hernia repair, and the pain associated therewith there is no objective evidence to support listing level severity under 1.00, and specifically under 1.04 of the spine." R. 18 (internal citations omitted). In discussing the records supporting this conclusion, ALJ noted that:

> Records reveal a history of decompressive laminectomy and foraminotomy L3-L4 and L4-L5 in 2016. MRI in March of 2017 showed residual disc osteophyte complex and facet arthropath encroachment on the lateral recesses, and grade I retrolisthesis. On August 2, 2017, she had lumbar facet block. At the consultative examination on August 11, 2017, she had a normal gait, normal range of motion, normal motor strength, negative straight leg raise, and normal sensation. To be met, listing 1.04 requires disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord with other factors as detailed in listing 1.04. The claimant has diagnoses to support the severe impairments listed herein. There is medication prescribed, and some treatment with injections, but her diagnoses and descriptions in her records do not support listing level severity. Treating records indicate that she has a history of L3-L4 disc bulge with severe left foraminal stenosis and mild canal stenosis, moderate bilateral foraminal stenosis and broad based disc bulge at L4-L5 with bilateral facet arthropathy, and is status post decompressive laminectomy and foraminotomy at L3-L4-L4-L5 in 2016. She received a lumbar steroid injection at L4 on November 9, 2018. At that time, notes reveal that she receives relief with injections for several weeks to a month each time. Treatment notes also indicate that she has been referred for hernia laparoscopic ventral incisional hernia repair. Even so, those notes indicate that she ambulates without difficulty. Although the claimant's treatment records show complaints of pain and pain management, there are no radiological findings to support listing level severity of this impairment.

R. 18 (internal citations omitted).  The ALJ found that Plaintiff "may have pain and some neurological impacts, but nothing indicates an inability to ambulate effectively anywhere in the record." R. 19.

At Step Three, the ALJ set forth the pain standard and her duty to determine if "statements about the intensity, persistence, and limiting effects of pain" are supported by objective medical evidence. R. 20.  The ALJ stated that she reviewed Plaintiff's responses to multiple submitted forms as well as the testimony she provided at the hearing. R. 17–18.  The ALJ stated that she also considered listings analysis conducted at Step Two, the opinion evidence, and the treating records, and found that some limitations do exists, "but not to the level of severity alleged by the plaintiff." R. 21.   The ALJ noted that the limitations she has assigned are "consistent with and supported by the records and reports obtained from the treating physicians and with the evidence as a whole" and stated:

> Though she alleges complete debilitation with respect to her physical abilities due to her impairments, they do not actually appear to involve symptom severity that would preclude performance of a range of sedentary exertional activity. While she might be limited with respect to performance of great exertion and or heavy labor, there is nothing that would suggest preclusion of this level work. Therefore, and as supported by the evidence, we will limit her exertionally to a sedentary RFC. There is insufficient evidence of greater musculoskeletal or systemic problems/weakness that would justify more significant restrictions. She can climb ramps and stairs, but never climb ladders, ropes, or scaffolds; balance frequently; sto[o]p occasionally; kneel occasionally; crouch occasionally; and crawl occasionally. This takes her lumbar issues into consideration as well as her hernia pre repair. In addition, she can occasionally operate motor vehicles and work around machinery. Due to her complaints, I limited her to the above restrictions. There is insufficient evidence of greater musculoskeletal or systemic problems that would justify more significant restrictions. Potential medication side effects, justifies the incorporation of exertional as well as environmental restrictions such that she should perform work tasks in a space

where she would not be around workplace hazards such as unprotected heights.

R. 21.

When reviewing subjective complaints, such as subjective pain testimony, and making a credibility determination based upon them, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote*, 67 F.3d at 1561; *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) ("'Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court.'") (citations omitted). "The credibility determination does not need to cite 'particular phrases or formulations' but it cannot merely be a broad rejection which is 'not enough to enable [the court] to conclude that [the ALJ] considered her medical condition as a whole.'" *Id.* at 1210–11 (citations and internal quotes omitted).

Here, the ALJ properly applied the *Holt* pain standard by finding that Plaintiff met the first prong of the pain standard, which requires evidence of an underlying medical condition, but found that Plaintiff failed to set forth the required "objective medical evidence that confirms the severity of the alleged pain arising from that condition" or "that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt*, 921 F.2d at 1223. The ALJ reviewed Plaintiff's testimony of daily activities, the medical records, and the medications and procedures used to control her pain, and concluded that while Plaintiff does experience pain that requires some limitations, the record does not support limitations to the level as

alleged. While the ALJ did not explicitly discredit Plaintiff's testimony of debilitating pain, the implication of the credibility finding makes it obvious and clear to this Court that the ALJ considered Plaintiff's pain testimony. *See Carman v. Astrue*, 352 F. App'x 406, 408 (11th Cir. 2009) (finding that where the ALJ did not explicitly recite a formulaic credibility determination, "[t]he ALJ articulated various inconsistencies in [the claimant's] evidence that a reasonable person could conclude supported the ALJ's finding that [the claimant's] subjective complaints of pain were not entirely credible").

"[A] clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1561–62. The Court finds the ALJ articulated the required reasons for her determination related to discrediting Plaintiff's subjective complaints of pain and finds them to be supported by substantial evidence.

**B.     Evaluation of the severity of Plaintiff's mental impairments.**

  i.  Failure to evaluate evidence of psychiatric symptoms.

Next, Plaintiff argues that the "ALJ also erred by failing to consider the impact of [Plaintiff's] mental functioning on her ability to work." (Doc. 12) at 7. Specifically, Plaintiff argues that the ALJ failed to consider or evaluate "evidence of psychiatric symptoms" found within her testimony and also failed to "secure an evaluation from a psychologist or psychiatrist despite [Plaintiff's] uncontradicted testimony that she struggles daily with tearfulness and low frustration tolerance/irritability." (Doc. 12) at 7. The Commissioner properly points out that Plaintiff did not allege a disability because of any mental impairments in her initial application or at the administrative hearing.

Essentially, the Commissioner argues that Plaintiff waived her right to raise this argument by not presenting it before the ALJ, the final decisionmaker in this case.

On May 18, 2017, Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI for supplemental security income in which she alleged that her ability (both physically or mentally) to work was limited due to osteoarthritis and spinal stenosis, as well as the pain resulting from both conditions. R. 191. On November 15, 2018, Plaintiff attended a hearing before the ALJ where she testified that her impairments include: scoliosis of the spine, disc bulge, spinal stenosis, ventricle abdominal hernia, obesity with edema, shortness of breath, and headache disorder.  R. 33. Plaintiff also testified that due to her pain and limitations she is "stressed out a lot," she gets frustrated, she cries "every day, all day," she is "in an uproar," and generally is just not herself. R. 44–45.  Plaintiff cites this testimony as "evidence of psychiatric symptoms," arguing that "the ALJ erred by entirely ignoring the possibility that [she] has mental restrictions and failing to obtain a psychiatric or psychological consultative examination for the claimant." (Doc. 12) at 7.

The United States Supreme Court, focusing on the fact that Social Security proceedings are "inquisitorial rather than adversarial," held that "[c]laimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues." *Sims v. Apfel*, 530 U.S. 103, 107–12 (2000); *see also Loudermilk v. Barnhart*, 290 F.3d 1265, 1268 n.1 (11th Cir. 2002), *reh'g and reh'g en banc denied*, 52 F. App'x 489, 2002 WL 31415797 (11th Cir. 2002) ("The Supreme Court has held that a Social Security claimant's failure to raise an issue at

the administrative level does not deprive a court of jurisdiction to consider the issue when it is raised for the first time during judicial proceedings.").  While there is no exhaustion requirement that would preclude raising an issue for the first time during federal appellate review,[2] Eleventh Circuit precedent holds that claimants must meet their burden to establish a disability at the administrative level.

For example, in *Ingram v. Commissioner of Social Security Administration*, the claimant argued before the district court that the she testified before the ALJ that she took a special education class, but the ALJ failed to develop the record to determine her mental capabilities. 496 F.3d 1253, 1260 (11th Cir. 2007).  The claimant also submitted a psychological evaluation to the Appeals Council indicating "mental retardation" that was not previously presented before the ALJ, but after reviewing the evidence the Appeals Council denied review. *Id.*  The Eleventh Circuit held that "[e]ven though Social Security courts are inquisitorial, not adversarial, in nature, claimants must establish that they are eligible for benefits." *Id.* at 1269.  The Eleventh Circuit further stated that "[the claimant] had an obligation to raise an issue as to her mental capacity at her hearing. The administrative law judge had enough information to resolve [the claimant's] application." *Id.*  Thus, the Eleventh Circuit concluded that the claimant's argument that the ALJ "failed to develop the record as to her mental capacity" was erroneous and that the ALJ did not err by not inquiring into the claimant's mental capacity. *Id.*

---

[2] Plaintiff did not raise any argument or submit any new medical evidence to the Appeals Council that she suffers from any mental impairment that might limit her ability to work. R. 244.

Similarly, in *Sullivan v. Commissioner of Social Security*, the claimant argued that the ALJ failed to consider two doctors' reports and address her impaired fine motor skills due to her brachydactyly and syndactyly. 694 F. App'x 670, 671 (11th Cir. 2017).  The Eleventh Circuit noted that the claimant was represented by counsel and carries the burden to prove that she is disabled. *Id.*  The Eleventh Circuit further noted the claimant "did not allege these conditions in her application nor did she raise them at her hearing before the ALJ." *Id.*  The Eleventh Circuit held that "[i]n a case like this, persuasive authority convinces us that this claim cannot proceed because [the claimant] failed to allege it to the ALJ and therefore could not have proven her disability on this basis," and "[w]e therefore find no reversible error by the ALJ on this claim." *Id.*

In this case, Plaintiff argues that her testimony that she is "stressed out a lot," she gets frustrated, she cries "every day, all day," she is "in an uproar," and generally is just not herself is enough evidence of a mental impairment that the ALJ should have inquired further.  However, Plaintiff has not cited to, nor can the undersigned locate within the record, medical evidence that could establish mental impairments that lasted, or were expected to last for at least twelve months.  In fact, the medical evidence of record contradicts Plaintiff's claims that she has suffered any mental impairments.  For example, on November 29, 2016, Dr. Harold A. Foster, MD, conducted a neurological and psychiatric mental status review of Plaintiff and found that Plaintiff's judgment and insight was intact; that she was oriented to person, place, time; and that she had a normal mood with appropriate affect. R. 422.  On January 3, 2017, Dr. Njedeka Obiekwe, MD, noted upon review that Plaintiff was negative for psychiatric issues. R. 429.  On August 2, 2017,

Dr. David Herrick, MD, at CFP Auburn/Opelika conducted a mental status examination and noted that Echols was "grossly oriented to person, place and time. Judgement and insight intact." R. 440.

Further, on March 16, 2018, Plaintiff filled out the Alabama Department of Public Health Annual Patient Self Health History Form and Plaintiff responded "no" to questions regarding whether she has ever been told that she has depression and whether she thinks she has depression or anxiety. R. 447. On August 14, 2018, just three months prior to the hearing before the ALJ, Dr. Foster did another mental status review of Plaintiff and noted that she was oriented to person, place, and time, and that her mood was normal with an appropriate affect. R. 463.  Finally, on August 16, 2018, East Alabama Medical Center performed a psychosocial screening and noted that Plaintiff was not "exhibiting emotional/behavioral signs and symptoms (i.e. suicidal, homicidal, mental illness, depression, OD, etc.)." R. 482.

Plaintiff, who is represented by counsel, has also failed to submit any "new, material, and chronologically relevant evidence" to support a claim that her ability to work is limited by a mental impairment before the Appeals Council and this Court. *Ingram,* 496 F.3d at 1261 ("The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'"). Plaintiff's testimony during the hearing before the ALJ is simply not enough to meet her burden of proving that her impairment is severe and that she is eligible for benefits, particularly in light of the medical evidence that contradicts her claim.  Therefore, the Court

finds that Plaintiff has waived her right to raise the argument before the Court and, further, that the Commissioner's decision is supported by substantial evidence. *See Smith ex rel. J.T.H. v. Astrue*, 2008 WL 2559392, at *3 (M.D. Ala. June 24, 2008) ("Given that, at step two of the inquiry, the burden of proof is on claimant to prove an impairment is severe and more than a mere, slight abnormality, and [the plaintiff] plainly had the opportunity on at least two occasions to claim recurrent upper respiratory infection as a disabling condition, the Court finds her failure constitutes a waiver of her right to raise the argument before this Court.").

ii.      Failure to secure a mental consultative examination.

Finally, Plaintiff asserts that the ALJ failed to "secure an evaluation from a psychologist or psychiatrist despite [Plaintiff's] uncontradicted testimony that she struggles daily with tearfulness and low frustration tolerance/irritability." (Doc. 12) at 7. The regulations provide that an ALJ "may" refer a claimant to "one or more physical or mental examinations or tests" if the medical sources do not provide "sufficient medical evidence about [the claimant's] impairment for [the ALJ] to determine whether [the claimant is] disabled." 20 C.F.R. § 404.1517.  While the ALJ has complete discretion over ordering a consultative examination, it is "reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for [her] to make an informed decision." *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (citing *Ford v. Sec'y of Health & Human Servs.*, 659 F.2d 66, 69 (5th Cir. 1981) (holding that "the administrative decision is not supported by substantial evidence if the administrative law judge does not have before [her] sufficient facts on which to make an informed decision.").

In *Street v. Barnhart*, this District was faced with an analogous fact pattern. 340 F. Supp. 2d 1289 (M.D. Ala. 2004).  The plaintiff alleged on appeal that the ALJ erred by not finding his mental impairments to be severe in nature and for failing to order a consultative mental examination. *Id.* at 1293.  This Court found that the record was "devoid of evidence that the plaintiff's depression lasted, or was expected to last, for twelve months [. . .] and therefore [could not] conclude that the ALJ was required to consider plaintiff's depression 'severe' or to find the plaintiff disabled on account of it."  *Id*.  This Court concluded that the ALJ "was entitled to disregard" the plaintiff's depression from the analysis and turned to the plaintiff's argument that the ALJ was required to order a consultative examination to evaluate his mental state. *Id.*  Following a review of the relevant medical evidence, the court found the record devoid of any "diagnosis, treatment, or other evidence of depression" other than as temporary phenomenon in 1998 caused by physical limitations that had since been abated. *Id.*  This Court stated that "[t]he fact that the plaintiff did not before his appeal (whether in his own testimony or through counsel) raise the question of his alleged depression also suggests that he was not suffering significantly from it at the time of the hearing." *Id.* The court found the record to be sufficient and concluded that it was adequate to support an informed decision. *Id.*

Like this Court previously determined in *Street*, the record here is not only devoid of any medical evidence to support Plaintiff's claim of a mental impairment, it contradicts such a notion.  The only support in the record for Plaintiff's argument are a few sporadic statements made during the hearing before the ALJ. *See Sneed v. Barnhart*, 214 F. App'x 883 (11th Cir. 2006) (Where the claimant testified to "behavior seemingly consistent with

depression" and submitted medical evidence four months after the ALJ's decision, the Eleventh Circuit held that it was "unclear how the ALJ erred in failing to consider this evidence and to request any consultative examinations based upon it before determining that [the claimant] did not suffer from a severe mental impairment."); *Street v. Barnhart*, 133 F. App'x 621, 630 (11th Cir. 2005) (holding that the ALJ's failure to order a consultative psychological examination solely based upon the claimant's testimony that he "can't stand crowds" was not error because he "and his counsel failed to cite anything other than a physical condition as the basis for [the claimant's] disability in his application and in his testimony at [the hearing]"). The undersigned finds the record to be sufficiently developed to make an informed determination on Plaintiff's application. *See Ingram*, 496 F.3d at 1269 ("[The claimant] had an obligation to raise an issue as to her mental capacity at her hearing. The administrative law judge had enough information to resolve [the plaintiff's] application.); *Good v. Astrue*, 240 F. App'x 399, 403 (11th Cir. 2007) (holding "no other physician recommended an additional consultation, and the record was sufficiently developed for the ALJ to make a determination," and that "remand was not warranted."). Therefore, the undersigned concludes that the ALJ did not err by failing to order a psychiatric evaluation.

## VII.   CONCLUSION

Based on the foregoing, the undersigned concludes that the Commissioner's decision is supported by substantial evidence and is based upon the proper legal standards. Accordingly, the decision of the Commissioner is AFFIRMED.

A final judgment will be entered separately.

DONE this the 1st day of October, 2020.

/s/ Stephen M. Doyle
CHIEF UNITED STATES MAGISTRATE JUDGE